IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 21, 2007

**STATE OF TENNESSEE V. MARGIE FRANCES HAMBY**

**Direct Appeal from the Circuit Court for Blount County**
**No. C-15577     D. Kelly Thomas, Jr., Judge**

_____

**No. E2006-01484-CCA-R3-CD** - Filed September 5, 2007

_____

A Blount County jury convicted the Defendant, Margie Frances Hamby, of attempted theft of property valued under $500, and the trial court sentenced her to six months, with thirty days in jail and the balance to be served on supervised probation. On appeal, the Defendant contends that the trial court erred in not granting her full probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Mack Garner, District Public Defender, Maryville, Tennessee (at trial), J. Liddell Kirk, Knoxville, Tennessee (on appeal), for the Appellant, Margie Frances Hamby.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Mike Flynn, District Attorney General; Rocky Young, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

In this case, the Defendant was indicted by the Blount County Grand Jury for one count of theft of property valued under $500. At her trial, the following evidence was presented: Jason Jones testified that he was the Food City store manager on November 11, 2004, when the Defendant came into his store. When she first arrived, his associate advised him to monitor her with the in-store cameras, which he did. He noticed that she was picking up items from the shelf, placing them in her buggy, and then placing them back on the shelf. He then saw her pick up rat poison from a shelf, pull her shirt neck down, and conceal the merchandise in her shirt.

1

Jones testified that he then saw the Defendant repeat this process with another package of rat poison. Immediately thereafter, Jones called the police.

Jones testified that, after the officers arrived, the Defendant first went to the front of the store, then turned and went back through the store to the ladies' restroom, and finally went into the restroom. Jones said that he sent a female associate into the restroom when the Defendant exited to see if she had disposed of anything. The female associate found an empty, open package of pantyhose in the trash can.

Jones said that he was present when the Defendant was searched. Prior to searching her, the police officer asked her if she had the contents of the pantyhose package, and the Defendant said that she did not have any pantyhose with her. The officer then searched the Defendant's purse, where he found some pantyhose. Jones testified no packages of rat poison were ever found on the Defendant. He explained that, after he saw the Defendant conceal the rat poison, he did not continue to watch her with the in-store camera. There was no video of the Defendant concealing the pantyhose.

The videotape of the Defendant in the Food City was then played for the jury. On cross-examination, Jones testified that he determined what item the Defendant had concealed by going to the location where he saw her hiding the merchandise in her shirt. Jones agreed that the Defendant did not leave the store between the time that the items were concealed and when she was arrested.

Officer Hank Morris testified that, when he first responded to the call from the Food City on November 11, 2004, the manager showed him the video while another associate was watching the Defendant. After viewing the video, the officer waited outside of the restroom for the Defendant to exit, and he asked her to go to the manager's office with him. There, he asked the Defendant if she had any merchandise on her, and the Defendant said that she did not take anything. He found pantyhose in her purse, and he compared them to the package that was found in the bathroom to ensure that they were the same size and color as those found in her purse. He determined that the Defendant did not have a receipt for the pantyhose.

Based upon this evidence, the jury found the Defendant guilty of the lesser-included offense of attempted theft of property valued under $500.

At a sentencing hearing, the following occurred: The trial court noted that the sentencing hearing had been set for the previous day, but the Defendant had not appeared. She was, therefore, in custody. Further, the court noted that the Defendant's record indicated that she had pled guilty in July of 2004 to theft of property valued under $500, was given unsupervised probation and diversion, and ordered to pay $20 per month toward her fine and costs. At the time of the hearing, she still owed $546.

The Defendant testified that, on the day of her arrest, she was shopping in Food City with her coupons, which she kept separated in different containers. She said that, in the process of looking through the coupons, she would lay the items down on the counters and then pick another up. She said that, because she has limited mobility and other health problems, she "does peculiar things that might not seem ordinary." She said that she did not have any pockets on her that day so she "put things where they stay." The Defendant testified that she never took anything that day at the Food City. She asserted that the pantyhose that were found on her that day were medical hose that were for keeping her legs warm and keeping the circulation working better in her legs.

The Defendant then explained that she only pled guilty to shoplifting in Washington County out of convenience, and she was not in fact guilty. About missing the sentencing hearing the previous day, the Defendant said that she appeared at court but went home because her house was in the process of being condemned, and she was "getting physically sick" and was not able to think straight.

On cross-examination, the Defendant clarified that the surveillance video showed her putting things in her shirt. She was not putting the store's merchandise in her shirt but, rather, she was putting the little red plastic containers that hold her coupons in her shirt.

Based upon this evidence and the arguments of counsel, the trial court found:

> [Y]ou are guilty of attempted theft of goods valued at less than $500. That is a Class B misdemeanor. A six-month sentence is imposed. A $500 fine, as levied by the Jury, is imposed.

> I'm going to order that [the Defendant] serve . . . 30 days in the jail. Balance on probation. Of course, she's eligible for the 25 percent reduction.

> In reaching this sentence, two things: Number one is a previous shoplifting in Washington, for which she accepts no responsibility; second thing is this shoplifting, which obviously is on tape, which she continues to accept no responsibility. She will not recognize the reality of any situation and address it truthfully. She is defiant, which I think is the best word to describe it. She is going to say and do what she wants to say and do, irrespective of what the facts are. And that was illustrated yesterday by coming up to the courthouse and not appearing for the sentencing. And I don't think there's anything that a probation officer can tell [the Defendant] to do that she would do, unless she just happened to want to. Anything else, she's just going to ignore.

> And this sentence is designed to illustrate the fact that basic criminal laws and court orders have to be followed and to not do it, a person goes to jail.

It is from this order that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred in not granting her full probation because the punishment in this case is not reasonably related to the seriousness of the offense for which she was convicted in that the value of the property taken was minimal. The Defendant was convicted of a class B misdemeanor, which carries a sentence not greater than six months. T.C.A. § 40-35-111(e) (2003). The trial court sentenced her to six months, with thirty days to be served in jail and the balance on supervised probation.

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ross,* 49 S.W.3d 833, 847 (Tenn. 2001); *State v. Pettus,* 986 S.W.2d 540, 543 (Tenn. 1999); *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. *State v. Dean,* 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler,* 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith* 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. *See* T.C.A. § 40-35-210 (1997 & Supp. 2002); *State v. Taylor,* 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2003), Sentencing Comm'n Cmts.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. *See* T.C.A. § 40-35-302(b). Although the Sentencing Reform Act typically treats misdemeanants and felons the same, misdemeanants are not given the presumption of a minimum sentence. *See State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be served." T.C.A. § 40-35-302(a). A misdemeanor sentence, unlike a felony sentence, has no

4

sentence range.  *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The trial court is allowed greater flexibility in setting misdemeanor sentences than felony sentences.  *State v. Johnson,* 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999).  The trial court should consider enhancement and mitigating factors in making its sentencing determinations; however, unlike the felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires the trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement."  *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998).  The misdemeanor offender must be sentenced to an authorized determinate sentence with a percentage of not greater than seventy-five percent to be served by the defendant before he or she is eligible for rehabilitative programs.  T.C.A. §§ 40-35-302(d).  When a defendant challenges a misdemeanor sentence, this Court conducts a de novo review with a presumption that the trial court's determinations are correct.  T.C.A. § 40-35-401(d).

In the case under submission, the Defendant admitted that she had previously pled guilty to theft of property valued under $500, but she stated that she was not guilty of that offense. Further, she testified that she was not guilty of taking any property in this case.  The trial court based its sentencing decision on the fact that the Defendant had a previous conviction and that she accepted no responsibility for her conduct in that case or in the present case.  The trial court also found the Defendant "defiant," and the court did not think that the Defendant would respect or listen to her probation officer.  The court, therefore, ordered some confinement to illustrate to the Defendant that court orders must be followed.  We conclude that the trial court acted within its discretionary authority in requiring the Defendant to serve thirty days of her six-month effective sentence in confinement.

### III. Conclusion

Based on the foregoing reasoning and authority, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

5